# FEDERAL PUBLIC DEFENDER OFFICE
## DISTRICT OF MASSACHUSETTS
### 51 SLEEPER STREET, 5TH FLOOR
### BOSTON, MASSACHUSETTS 02210

TELEPHONE: 617-223-8061
FAX: 617-223-8080

September 19, 2016

The Honorable Judge Indira Talwani
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
One Courthouse Way
Boston, MA 022210

      Re:    United States v. Cody Herr
           Docket No.:  16-cr-10038-IT

Dear Your Honor:

In relation to the defendant's Motion to Dismiss, I am writing to inform the Court that today the Tenth Circuit ruled that the residual clause of 18 U.S.C. §16(b) is unconstitutionally vague in light of *Johnson v. United States*, 135 S.Ct. 2551 (2015). The decision is *Golicov v. Lynch,* No. 16-9530. I have attached a copy for the Court.

As noted in the defendant's filings, three other Circuits have likewise concluded that the residual clause of 18 U.S.C. §16(b), which is identically worded to the residual clause of 18 U.S.C. §924(c)(3), is unconstitutionally vague. *See Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016).

Sincerely,

*/s/ Jane F. Peachy*
Jane F. Peachy
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

      I, Jane Peachy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 19, 2016.

*/s/ Jane Peachy*
Jane Peachy

FILED
United States Court of Appeals
Tenth Circuit

**September 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CONSTANTINE FEDOR GOLICOV,
a/k/a Constantin Fedor Golicov, a/k/a
Constantine Fedo Golicov, a/k/a
Constantin Golicov, a/k/a Kostik
Golicov, a/k/a Constantin Golikov,
a/k/a Constantine Fedor Golicv, a/k/a/
Constantine F. Golicov,

     Petitioner,

v.

LORETTA LYNCH, Attorney General
of the United States,

     Respondent.

 

NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD; IMMIGRANT
LEGAL RESOURCE CENTER.

     Amici Curiae.

No. 16-9530

---

**APPEAL FROM THE BOARD OF IMMIGRATION APPEALS**
**(Petition for Review)**

---

Skyler Anderson, Anderson & Benson, PLLC, Taylorsville, Utah, for Petitioner.

Sunah Lee, United States Department of Justice, Washington, D.C. (Benjamin C.
Mizer, Principal Deputy Assistant, Assistant Attorney General, Civil Division;
Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation; Song E.

Park, Senior Litigation Counsel, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., on the brief), for Respondent.

Sejal Zota, National Immigration Project of the National Lawyers Guild, Boston, Massachusetts, filed an amicus curiae brief in support of Petitioner.

_____

Before **BRISCOE, HOLMES** and **MORITZ**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

Petitioner Constantine Fedor Golicov, a lawful permanent resident of the United States, seeks review of an order of the Board of Immigration Appeals (BIA) concluding that his Utah state conviction for failing to stop at a police officer's command renders him removable under the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii).  That provision of the INA requires the removal of "[a]ny alien who is convicted of an aggravated felony at any time after admission."  8 U.S.C. § 1227(a)(2)(A)(iii).  The INA defines the term "aggravated felony" to include "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(F).

Golicov argues, as he did before the BIA, that the INA's definition of "crime of violence," which expressly incorporates 18 U.S.C. § 16(b)'s definition of "crime of violence," is unconstitutionally vague.  In support, he points to the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015).  In

2

Johnson, the Court held that the Armed Career Criminal Act's residual definition of the term "violent felony," 18 U.S.C. § 924(e)(2)(B), was void for vagueness.

Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we agree with Golicov, grant his petition for review, vacate the order of removal, and remand the case to the BIA for further proceedings consistent with this opinion.

## I.

Golicov was born on March 12, 1986, in the Eastern European country of Moldova. On August 15, 2001, he became a lawful permanent resident of the United States.

On November 9, 2010, Golicov was convicted in Utah state court of the third-degree felony of failing to stop at a police officer's command, in violation of Utah Code Ann. § 41-6a-210(1)(a)(i), and sentenced to five years' imprisonment. The statute of conviction reads as follows:

> An operator who receives a visual or audible signal from a peace
> officer to bring the vehicle to a stop may not:
>> (i) operate the vehicle in willful or wanton disregard of the
>> signal so as to interfere with or endanger the operation of any
>> vehicle or person . . . .

Utah Code Ann. § 41-6a-210(1)(a)(i).

On December 4, 2012, while Golicov was still serving his prison sentence, the Department of Homeland Security (DHS) served Golicov with a Notice to Appear (NTA), charging that he was removable under § 227(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), because his Utah conviction constituted an

aggravated felony under the INA.

The INA outlines several "classes of deportable aliens," all of which "shall, upon the order of the Attorney General, be removed." 8 U.S.C. § 1227(a). Of relevance here, one such class includes "[a]ny alien who is convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii).

The term "aggravated felony" is expressly defined in the INA and includes, among other things, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). In turn, a "crime of violence" is defined in 18 U.S.C. § 16 to include:

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16(b).

Golicov denied the DHS's charge and moved to terminate the removal proceedings. On February 8, 2013, the immigration judge (IJ) issued a decision dismissing the sole charge of removability and terminating the proceedings against Golicov. DHS appealed from that decision.

On July 27, 2015, the BIA sustained DHS's appeal and reversed the IJ's decision. The BIA concluded that Golicov's Utah state conviction was "a categorical crime of violence under 18 U.S.C. § 16(b) and an aggravated felony as defined by section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C.

§ 1101(a)(43)(F)." ROA at 3.  The BIA remanded the record to the IJ, pursuant

to the DHS's request, "to explore [Golicov's] potential eligibility for relief."  Id.

at 3.

On remand to the IJ, Golicov moved to terminate the proceedings on the

grounds that the Supreme Court's decision in Johnson effectively rendered

unconstitutional and improper for use in immigration proceedings the definition

of "crime of violence" contained in 18 U.S.C. § 16(b).  On January 11, 2016, the

IJ issued a decision and order rejecting Golicov's argument and denying his

motion to terminate.  Golicov appealed to the BIA.  On May 5, 2016, the BIA

issued a written decision agreeing with the IJ's legal conclusions and dismissing

Golicov's appeal.

Golicov subsequently filed a petition for review with this court.

## II.

The central question posed by Golicov in this appeal is whether the INA's

definition of "crime of violence," 8 U.S.C. § 1101(a)(43)(F), which expressly

incorporates 18 U.S.C. § 16(b)'s definition of that same term, is

unconstitutionally vague in light of the Supreme Court's decision in Johnson.

The BIA answered this question in the negative.  We review the BIA's decision

de novo.  Mena-Flores v. Holder, 776 F.3d 1152, 1162 (10th Cir. 2015) ("In

reviewing the Board's decision, we engage in de novo review of constitutional

and other legal questions.").

A.

The void-for-vagueness doctrine derives from the Due Process Clause of the Fifth Amendment, which guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  Supreme Court precedent "establish[es] that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  <u>Johnson</u>, 135 S. Ct. at 2556.  "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'"  <u>Id.</u> at 2556–57 (quoting <u>Connally v. Gen. Constr. Co.</u>, 269 U.S. 385, 391 (1926)).  "These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences."  <u>Id.</u>

B.

As a threshold matter, the government argues that the vagueness standard for criminal laws that was outlined in <u>Johnson</u> should not apply to the INA, which it characterizes as a civil statute governing removal.  Aplee. Br. at 13.  We disagree.  As the Sixth Circuit recently noted in rejecting this same argument in the context of an identical vagueness challenge to 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16(b), <u>Shuti v. Lynch</u>, — F.3d —, 2016 WL 3632539 at *5 (6th Cir.

July 7, 2016), the Supreme Court has stated that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993), and has specifically applied the void-for-vagueness doctrine in a deportation case, <u>Jordan v. De George</u>, 341 U.S. 223, 231 (1951).

To be sure, the government argues that the Court in <u>Jordan</u> "did not have occasion to decide whether the same vagueness standard that governs criminal statutes also governs statutes applied in civil removal proceedings." Aplee. Br. at 15. But, like the Ninth Circuit, which also addressed the same argument in the context of a vagueness challenge to 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16(b), we find the government's argument "baffling." <u>Dimaya v. Lynch</u>, 803 F.3d 1110, 1113 (9th Cir. 2015). As the Ninth Circuit explained, "<u>Jordan</u> considered whether the term 'crime involving moral turpitude' in section 19(a) of the Immigration Act of 1917, a type of offense that allowed for a non-citizen to 'be taken into custody and *deported*,' was void for vagueness," <u>id.</u> (quoting 341 U.S. at 225-31) (emphasis added), and "the Court explicitly rejected the argument that the vagueness doctrine did not apply," <u>id.</u> (citing 341 U.S. at 231). In short, <u>Jordan</u> "recognized" that "a necessary component of a non-citizen's right to due process of law is the prohibition on vague deportation statutes." <u>Id.</u> at 1113–14.

Thus, in sum, we agree with the Sixth and Ninth Circuits that "because deportation strips a non-citizen of his rights, statutes that impose this penalty are

subject to vagueness challenges under the Fifth Amendment."  Shuti, 2016 WL

3632539 at *5; see Dimaya, 803 F.3d at 1114 ("[W]e reaffirm that petitioner may

bring a void for vagueness challenge to the definition of a 'crime of violence' in

the INA.").

C.

Johnson addressed a constitutional vagueness challenge to the ACCA's

definition of the term "violent felony," 18 U.S.C. § 924(e)(2)(B).  The ACCA

defines the term "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year
> . . . that—
>     (i) has as an element the use, attempted use, or threatened use
> of physical force against the person of another; or
>     (ii) is burglary, arson, or extortion, involves use of explosives,
> *or otherwise involves conduct that presents a serious potential risk of*
> *physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).  "The closing words of this

definition, italicized above, have come to be known as the [ACCA's] residual

clause."  Johnson, 135 S. Ct. at 2556.

The Supreme Court in Johnson held that "[t]wo features of the residual

clause conspire to make it unconstitutionally vague."  Id. at 2557.  The Court

explained:

> In the first place, the residual clause leaves grave uncertainty about
> how to estimate the risk posed by a crime.  It ties the judicial
> assessment of risk to a judicially imagined "ordinary case" of a
> crime, not to real-world facts or statutory elements.  How does one
> go about deciding what kind of conduct the "ordinary case" of a

8

crime involves?  "A statistical analysis of the state reporter?  A survey?  Expert evidence?  Google?  Gut instinct?"  United States v. Mayer, 560 F.3d 948, 952 (C.A.9 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc).  To take an example, does the ordinary instance of witness tampering involve offering a witness a bribe?  Or threatening a witness with violence?  Critically, picturing the criminal's behavior is not enough; as we have already discussed, assessing "potential risk" seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out.  James[ v. United States, 550 U.S. 192, 127 S.Ct. 1586 (2007),] illustrates how speculative (and how detached from statutory elements) this enterprise can become.  Explaining why attempted burglary poses a serious potential risk of physical injury, the Court said: "An armed would-be burglar may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program.  Or a homeowner . . . may give chase, and a violent encounter may ensue."  550 U.S., at 211, 127 S.Ct. 1586.  The dissent, by contrast, asserted that any confrontation that occurs during an attempted burglary "is likely to consist of nothing more than the occupant's yelling 'Who's there?' from his window, and the burglar's running away."  Id., at 226, 127 S.Ct. 1586 (opinion of Scalia, J.).  The residual clause offers no reliable way to choose between these competing accounts of what "ordinary" attempted burglary involves.

At the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.  It is one thing to apply an imprecise "serious potential risk" standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction.  By asking whether the crime "*otherwise* involves conduct that presents a serious potential risk," moreover, the residual clause forces courts to interpret "serious potential risk" in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives.  These offenses are "far from clear in respect to the degree of risk each poses."  Begay[ v. United States], 553 U.S. [137,], 143, 128 S.Ct. 1581 [(2008)].  Does the ordinary burglar invade an occupied home by night or an unoccupied home by day?  Does the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information?  By combining indeterminacy about how to measure the risk posed by a

crime with indeterminacy about how much risk it takes for the crime
to qualify as a violent felony, the residual clause produces more
unpredictability and arbitrariness than the Due Process Clause
tolerates.

Id. at 2557–58 (italics in original).

The Court also noted, relatedly, that it "ha[d] had trouble making sense of

the residual clause" and that there had been "pervasive disagreement" among the

lower federal courts "about the nature of the inquiry one [wa]s supposed to

conduct" in determining whether a crime fell within the scope of the ACCA's

residual clause.  Id. at 2559–60.  The Court concluded that "[n]ine years'

experience trying to derive meaning from the residual clause convince[d] [it] that

[it] ha[d] embarked upon a failed enterprise."  Id. at 2660.  "Each of the

uncertainties in the residual clause may be tolerable in isolation," the Court

stated, "but 'their sum makes a task for us which at best could be only

guesswork.'"  Id. (quoting United States v. Evans, 333 U.S. 483, 495 (1948)).

Consequently, the Court held that "[i]nvoking so shapeless a provision to

condemn someone to prison for 15 years to life does not comport with the

Constitution's guarantee of due process."  Id.

Less than a year after Johnson was issued, the Supreme Court granted

certiorari in Welch v. United States, 136 S. Ct. 1257 (2016), to consider the

question of "whether Johnson is a substantive decision that is retroactive in cases

on collateral review."  Id. at 1261.  Although that issue is immaterial to the

10

instant appeal, the Court's description of its decision in <u>Johnson</u> bears

consideration:

> The <u>Johnson</u> Court held the residual clause unconstitutional under the
> void-for-vagueness doctrine, a doctrine that is mandated by the Due
> Process Clauses of the Fifth Amendment (with respect to the Federal
> Government) and the Fourteenth Amendment (with respect to the
> States).  The void-for-vagueness doctrine prohibits the government
> from imposing sanctions "under a criminal law so vague that it fails
> to give ordinary people fair notice of the conduct it punishes, or so
> standardless that it invites arbitrary enforcement."  <u>Id.</u>, at –––., 135
> S.Ct., at 2556.  <u>Johnson</u> determined that the residual clause could not
> be reconciled with that prohibition.

> The vagueness of the residual clause rests in large part on its
> operation under the categorical approach.  The categorical approach
> is the framework the Court has applied in deciding whether an
> offense qualifies as a violent felony under the Armed Career
> Criminal Act.  <u>See id.</u>, at –––, 135 S.Ct., at 2556–2557.  Under the
> categorical approach, "a court assesses whether a crime qualifies as a
> violent felony 'in terms of how the law defines the offense and not in
> terms of how an individual offender might have committed it on a
> particular occasion.'"  <u>Ibid.</u> (quoting <u>Begay</u>, <u>supra</u>, at 141, 128 S.Ct.
> 1581).  For purposes of the residual clause, then, courts were to
> determine whether a crime involved a "serious potential risk of
> physical injury" by considering not the defendant's actual conduct
> but an "idealized ordinary case of the crime."  576 U.S., at –––, 135
> S.Ct., at 2561.

> The Court's analysis in <u>Johnson</u> thus cast no doubt on the many laws
> that "require gauging the riskiness of conduct in which an individual
> defendant engages *on a particular occasion*."  <u>Ibid.</u>  The residual
> clause failed not because it adopted a "serious potential risk"
> standard but because applying that standard under the categorical
> approach required courts to assess the hypothetical risk posed by an
> abstract generic version of the offense.  In the <u>Johnson</u> Court's view,
> the "indeterminacy of the wide-ranging inquiry" made the residual
> clause more unpredictable and arbitrary in its application than the
> Constitution allows.  <u>Id.</u>, at –––, 135 S.Ct., at 2557.  "Invoking so
> shapeless a provision to condemn someone to prison for 15 years to

11

life," the Court held, "does not comport with the Constitution's guarantee of due process." Id., at ––––, 135 S.Ct., at 2560.

Id. at 1261–62 (italics in original).

### D.

To date, two circuits, the Sixth and Ninth, have addressed the precise question that is before us, and both concluded that the INA's residual definition of "crime of violence," 8 U.S.C. § 1101(a)(43)(F), which expressly incorporates the definition of that phrase contained in 18 U.S.C. § 16(b), is unconstitutionally vague in light of Johnson.[1] Shuti, 2016 WL 3632539 at *1; Dimaya, 803 F.3d at 1111. In addition, the Fifth and Seventh Circuits have addressed similar Johnson-based vagueness challenges in the context of criminal cases involving 8 U.S.C.

---

[1] Approximately two months prior to the Sixth Circuit's decision in Shuti, a separate Sixth Circuit panel considered and rejected a constitutional vagueness challenge to the statutory definition of "crime of violence" set forth in 18 U.S.C. § 924(c)(3)(B). United States v. Taylor, 814 F.3d 340, 376–79 (6th Cir. 2016). The Second Circuit also recently considered and rejected a constitutional vagueness challenge to the statutory definition of "crime of violence" set forth in 18 U.S.C. § 924(c)(3)(B). United States v. Hill, — F.3d —, 2016 WL 4120667 at *7–12 (2d Cir. Aug. 3, 2016).

The Sixth Circuit panel in Shuti "f[ou]nd Taylor wholly consistent with [its] conclusion." 2016 WL 3632539 at *8. More specifically, the panel in Shuti noted that "the statute at issue in Taylor is a criminal offense and 'creation of risk is an element of the crime.'" Id. (quoting Johnson, 135 S. Ct. at 2557). Thus, the Shuti panel noted, "[u]nlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding." Id.

Because § 924(c)(3)(B) is not implicated in this case, we offer no opinion on its constitutionality or upon any distinctions that may or may not exist between it and § 1101(a)(43)(F) or § 16(b).

§ 1326(b)(2), which expressly incorporates § 16(b)'s definition of "crime of violence" to define the statutory phrase "aggravated felony."  The Fifth Circuit, sitting en banc, concluded that § 16(b)'s definition of "crime of violence" is textually distinct from the ACCA's residual clause and thus is not unconstitutionally vague on its face or as applied.  United States v. Gonzalez-Longoria, — F.3d —, 2016 WL 4169127 at *1, *4, *5  (5th Cir. Aug. 5, 2016) (*en banc*).  In contrast, the Seventh Circuit concluded that "[s]ection 16(b) is materially indistinguishable from the ACCA's residual clause," and thus "is unconstitutionally vague according to the reasoning of Johnson."  United States v. Vivas-Ceja, 808 F.3d 719, 720 (7th Cir. 2015).

E.

Having carefully considered these principles and precedents, we agree with the Sixth, Seventh, and Ninth Circuits that 18 U.S.C. § 16(b) is not meaningfully distinguishable from the ACCA's residual clause and that, as a result, § 16(b), and by extension 8 U.S.C. § 1101(a)(43)(F), must be deemed unconstitutionally vague in light of Johnson.

Similar to the ACCA's residual clause, § 16(b), through its use of the phrase "by its nature," "directs our focus to the 'offense' of conviction" and thus "requires us to look to the elements and nature of the offense of conviction, rather than to the particular facts relating to the [defendant's] crime."  Leocal v. Ashcroft, 543 U.S. 1, 7 (2004).  In other words, similar to the ACCA's residual

13

clause, § 16(b) "requires courts to use a [two-step] framework known as the categorical approach when deciding whether" a prior conviction constitutes a crime of violence.  See Johnson, 135 S. Ct. at 2557.  Under the first step of this framework, a reviewing court must "picture the kind of conduct that the crime involves in 'the ordinary case.'"  Id.  Under the second step, a reviewing court must "judge whether that abstraction," i.e., the "ordinary case," falls within the standard outlined by the statute.  Id.

As was the case with the ACCA's residual clause, it is the combination of these two steps that "conspire to make [§ 16(b)] unconstitutionally vague."  Id.  To begin with, § 16(b) "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements."  Id.  As the Supreme Court noted in Johnson, "How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves?"  Id.  No doubt, the federal courts have struggled mightily over the years in answering this question.  In turn, the standard against which that ordinary case is measured, i.e., whether it "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 16(b), "leaves uncertainty about how much risk it takes for a crime to qualify as a" crime of violence, Johnson, 135 S. Ct. at 2558.  Indeed, "[n]either term—'substantial' in the INA or 'serious' in the ACCA—'sets forth [objective] criterion' to determine how much risk it takes to qualify as a crime of violence or

14

violent felony." <u>Shuti</u>, 2016 WL 3632539 at *6 (alteration in original).  And, the Court emphasized in <u>Johnson</u>, "[i]t is one thing to apply an imprecise ['substantial risk'] standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction."  135 S. Ct. at 2558.  In sum, § 16(b), by "requir[ing] courts to assess the hypothetical risk posed by an abstract generic version of the offense" at issue, <u>Welch</u>, 136 S. Ct. at 1262, "produces more unpredictability and arbitrariness than the Due Process Clause tolerates," <u>Johnson</u>, 135 S. Ct. at 2558.

We recognize that the Fifth Circuit concluded, and the government in this case argues, that the textual differences between § 16(b) and the ACCA's residual clause are significant enough to spare § 16(b) from being declared unconstitutionally vague.  To begin with, the Fifth Circuit noted, the ACCA's residual clause "requires courts . . . to decide whether the ordinary case would present a 'serious potential risk of *physical injury*.'"  <u>Gonzalez-Longoria</u>, 2016 WL 4169127 at *3 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  "In contrast, 18 U.S.C. § 16(b) requires courts to decide whether the ordinary case 'involves a substantial risk that *physical force* against the person or property of another may be used *in the course of committing* the offense.'"  <u>Id.</u> (quoting 18 U.S.C. § 16(b)).  In the Fifth Circuit's view, "[r]isk of physical force is more definite than risk of physical injury," and, "by requiring that the risk of physical force arise 'in the course of committing' the offense, 18 U.S.C. § 16(b) does not allow courts to consider conduct or events occurring after the crime is complete."  <u>Id.</u>  As a

15

result, the Fifth Circuit concluded, § 16(b) "is predictively more sound—both as to notice (to felons) and in application (by judges)—than imputing clairvoyance as to a potential risk of injury." Id. at *4.

The Fifth Circuit also concluded that the "uncertainty about *how much risk it takes for a crime to qualify* is less pressing in the context of 18 U.S.C. § 16(b)" than in the context of the ACCA's residual clause. Id. As the Supreme Court noted in Johnson, the ACCA's residual clause "forces courts to interpret 'serious potential risk' in light of . . . four enumerated crimes" that "are 'far from clear in respect to the degree of risk each poses.'" 135 S. Ct. at 2558 (quoting Begay, 553 U.S. at 143). In contrast, the Fifth Circuit noted, the amount of risk required under § 16(b) "is not linked to any examples." 2016 WL 4169127 at *4. Thus, the Fifth Circuit concluded, § 16(b) "is just like the 'dozens of federal and state criminal laws' that employ terms such as 'substantial risk,' 'grave risk,' or 'unreasonable risk,' see Johnson, 135 S.Ct. at 2561, that state and federal judges interpret as a matter of routine." Id.

We respectfully disagree with the Fifth Circuit and the government that these textual differences are sufficient to meaningfully distinguish § 16(b) from the ACCA's residual clause. It is true that the standards employed in the two statutes vary somewhat: 16(b) focuses on the risk of physical force being used by the defendant in the course of committing the offense, whereas the ACCA's residual clause focuses on the risk of physical injury resulting from the

16

defendant's conduct.  But even if we assume that the standard employed in § 16(b) is "marginally narrower" than the standard employed in the ACCA's residual clause,[2] the fact remains that they are both "abstraction[s] all the same." Shuti, 2016 WL 3632539 at *7; see Vivas-Ceja, 808 F.3d at 722 ("Any difference between these two phrases is superficial.").  In other words, neither phrase offers courts meaningful guidance to assess the risk posed by the hypothetical offense.

As for the fact that the risk standard employed in § 16(b) contains no list of enumerated crimes, we agree with the Sixth, Seventh and Ninth Circuits that this does not serve to meaningfully distinguish § 16(b) from the ACCA's residual clause because the enumeration of specific crimes in the ACCA's residual clause was not one of the "[t]wo features of the residual clause"—i.e., the determination of the ordinary case and the risk assessment of that ordinary case—that "conspire[d]," in the Supreme Court's view, "to make it unconstitutionally

---

[2] On this point, we tend to agree with the dissent in Gonzalez-Longoria:

The difference [between the two statutory phrases], when sliced very thinly, may indicate that § 16(b) is slightly less indeterminate because a reviewing court can more easily determine the physical force of a crime than the future injury resulting from a crime; nonetheless, nearly all uses of physical force "risk a possibility of future injury."  Thus, virtually every criminal act that satisfies the § 16(b) test could also satisfy the residual clause's test; any distinction between the two statutes on this ground is of indeterminate consequence to § 16(b)'s unconstitutionality under Johnson.

2016 WL 4169127 at *11 (Jolly, J., dissenting).

17

vague." Johnson, 135 S. Ct. at 2557; see Shuti, 2016 WL 3632539 at *7 ("[T]he

existence of a prefatory 'list of examples,' though surely confusing, was not

determinative of the Court's vagueness analysis."); Vivas-Ceja, 808 F.3d at 723

(concluding that "[t]he government overreads" the part of the Court's analysis in

Johnson discussing the enumerated crimes); Dimaya, 803 F.3d at 1118 ("Johnson

. . . made plain that the residual clause was void for vagueness in and of itself for

the reasons stated in reaching its decision, and not because of the clause's relation

to the four listed offenses.").  To be sure, the Court in Johnson indicated that the

list of enumerated crimes in the ACCA's residual clause added to the uncertainty

of the risk assessment required by that clause because the listed offenses "are 'far

from clear in respect to the degree of risk each poses.'"  Id. at 2558 (quoting

Begay, 553 U.S. at 143).  But this "was not determinative of the Court's

vagueness analysis." Shuti, 2016 WL 3632539.  That point was made clear by the

Court itself in Welch when it summarized its holding in Johnson: "The residual

clause failed not because it adopted a 'serious potential risk' standard but because

applying that standard under the categorical approach required courts to assess the

hypothetical risk posed by an abstract generic version of the offense."  136 S. Ct.

at 1262.  Nowhere in Welch did the Court mention the list of enumerated crimes

in the ACCA's residual clause, let alone indicate that the list was relevant to its

holding in Johnson.

Finally, we take note of what the Sixth Circuit has accurately described as

18

"the insidious comingling of [INA, ACCA and Sentencing Guidelines] precedents" that occurred prior to <u>Johnson</u>.  <u>Shuti</u>, 2016 WL 3632539 at *6.  In sum, the BIA and the federal courts regularly applied ACCA and Guidelines precedents in INA cases, without regard to the textual differences between the various provisions.  <u>See</u> <u>id.</u> (citing cases).  This comingling, in our view, confirms that the textual differences relied on by the Fifth Circuit in <u>Gonzalez-Longoria</u> and argued by the government in this case are simply not significant enough to allow us to treat the two provisions differently in terms of vagueness analysis.

F.

To summarize, we conclude that the INA's residual definition of "crime of violence," which expressly incorporates § 16(b)'s definition of that same term, is unconstitutionally vague in light of the Supreme Court's decision in <u>Johnson</u>.  As the Sixth Circuit has noted, "[f]rom a non-citizen's perspective, this provision substitutes guesswork and caprice for fair notice and predictability."  <u>Shuti</u>, 2016 WL 3632539 at *8.  And that in turn makes it impossible for "non-citizens and their counsel [to] be able to anticipate the immigration consequences of criminal convictions."  <u>Id.</u>

III.

The petition for review is GRANTED, the order of removal is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.

19