UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Criminal No. 16-cr-10038-IT |
| | * | |
| CODY HERR, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

October 17, 2016

TALWANI, D.J.

## I.   Introduction

Before the court is Defendant Cody Herr's Motion to Dismiss [#50]. On February 11, 2016, a grand jury indicted Defendant on charges of Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire, in violation of 18 U.S.C. § 1958(a), and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). See Indictment [#6].

Defendant moves, pursuant to Fed. R. Crim. P. 12(b)(2), to dismiss Count Two of the indictment, Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c). For the following reasons, Defendant's motion is GRANTED.

## II.   Discussion

The Defendant's core argument is that the Supreme Court's ruling in Johnson v. United States, 135 S. Ct. 2551, 2563 (2015) ("Johnson II"), which held that the residual clause of 18 U.S.C. § 924(e) was unconstitutionally vague, applies equally to the residual clause of 18 U.S.C. § 924(c). See Kolender v. Lawson, 461 U.S. 352, 357 (1983) (noting that the "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient

definiteness" so as to give fair notice as to what activity is prohibited and to avoid arbitrary enforcement, in compliance with the Due Process Clause).

    *a.   The Supreme Court's Ruling in Johnson II*

In Johnson II, the Supreme Court weighed the constitutionality of the Armed Career Criminal Act's ("ACCA") "residual clause," codified at 18 U.S.C. § 924(e)(2)(B)(ii). The ACCA enhanced punishment of felons who had been convicted of three or more prior "violent felon[ies]," see 18 U.S.C. § 924(e)(1), defined as a "crime punishable by imprisonment for a term exceeding one year [that is] burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." See 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added); Johnson II, 135 S. Ct. at 2556. The italicized portion above is known as the residual clause.

The Supreme Court struck the residual clause for unconstitutional vagueness. Johnson II at 2563. Specifically, the Court held that the *analytical framework* required by the residual clause "both denies fair notice to defendants and invites arbitrary enforcement by judges." Id. at 2258. That framework consisted of two parts, the *combination* of which exceeded constitutional limitations.  First, judges employed a "categorical approach," whereby they would begin analysis of a prior felony by looking not at its actual underlying conduct, but instead to the "ordinary" form that felony takes. Id. at 2557. Second, judges would then apply a "serious potential risk" standard to this abstraction. Id. Both of these steps were largely indeterminate: the categorical approach itself provided little guidance regarding how a judge might distill the "ordinary" version of a particular crime, and the "serious potential risk" standard amplified uncertainty by providing little guidance (other than a confusing list of examples) regarding whether a judge-made abstraction of a crime was *sufficiently* risky. Id. "By combining indeterminacy about how

to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." Id.

In Welch v. U.S., 136 S. Ct. 1257 (2016), the Supreme Court re-emphasized the categorical approach's centrality to the Johnson II holding. It affirmed that Johnson II's holding "cast no doubt on the many laws that 'require gauging riskiness of conduct in which an individual defendant engages *on a particular occasion*,'" but that the residual clause failed because it "required courts to assess the hypothetical risk posed by an abstract generic version of the offense." Id. at 1262 (emphasis in original) (quoting Johnson II, 135 S. Ct. at 2561).

   b.   *Johnson II precludes application of 18 U.S.C. § 924(c)(3)(B)*

Defendant now argues that Johnson II applies equally to 18 U.S.C. § 924(c)(3)(B). Under that statute, any person "who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any crime, possess a firearm" violates the statute. 18 U.S.C. § 924(c)(1)(A). The statute then defines "crime of violence" as "an offense that is a felony and— (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that *by its nature, involves a substantial risk that physical force against the property or person of another may be used in the course of committing the offense*." 18 U.S.C. § 924(c)(3)(A) and (B). (emphasis added). The First Circuit has not yet had occasion to address this question.

In the present case, the court would find little difficulty determining that the actual conduct charged here involves substantial risk of physical force against a person under the second clause, as the government first argued. But both parties agree that to assess whether the Defendant used or carried a firearm "during and in relation to [a] crime of violence," the court

3

must determine whether that crime, "*by its nature*, involve[d] a substantial risk that physical force against the person or property of another may be used in the course" of its being committed.[1] Thus, just as described by <u>Johnson II</u>, analysis here begins with the "categorical approach": this court must ignore the Defendant's actual conduct, and instead abstract the "ordinary" murder-for-hire.[2]  The court must then determine whether the ordinary form of the crime in turn "involves a substantial risk" of physical force. Both the ACCA and 18 U.S.C. § 924(c)(3)(B) thus direct judges to combine the indeterminacy inherent to the categorical approach with the indeterminacy inherent to standards such as "substantial risk," and thereby employ a doubly indeterminate analysis that the Supreme Court has specifically addressed and foreclosed.  Thus the analytical framework the court must use to determine whether a crime is a

---

[1] This question is one of law, fit for judicial resolution. <u>See</u> <u>United States v. Weston</u>, 960 F.2d 212, 217 (1st Cir. 1995).

[2] There is ample reason to jettison this "categorical approach" with regard to 18 U.S.C. § 924(c), look instead to real-world facts, and thereby avoid any constitutional infirmity. As the government initially argued, in practice (and in the case here), defendants are typically charged under 18 U.S.C. § 924(c) contemporaneously with whatever offense would constitute a "crime of violence" (here, murder-for-hire). In part, this results from § 924(c)'s structure, which punishes the use of a firearm "*during* and *in relation to* any crime of violence," rather than enhancing punishment because of prior convictions not directly before the court. This reality largely negates the purpose of and justification for the categorical approach, which seeks to avoid the difficulties and inconsistencies inherent in the reconstruction of facts underlying *prior* convictions, whose records may be spotty or non-existent. <u>Johnson II</u>, 135 S. Ct. at 2562. In other words, the reasoning for the categorical approach set forth in <u>Taylor v. United States</u>, 495 U.S. 575, 600 (1990), while still consonant with statutes that require a court to assess *historical* convictions, bears little relevance to a statute requiring a court to assess an offense that is being freshly presented and adjudicated. The parties agree, however, that a categorical approach is necessary. <u>Reply to Government's Opposition to Defendant's Motion to Dismiss</u> [#67]; <u>Sur-Reply to Defendant's Motion to Dismiss</u> [#72]. That position may well be dictated by Supreme Court precedent, as that Court, construing identical language in another statute, has indicated that the phrase "by its nature" evinces Congress' direction that courts "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to the petitioner's crime." <u>See</u> <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 7 (2004) (construing 18 U.S.C. § 16(b)). At least one appellate court has concluded that the same language in 18 U.S.C. § 924(c)(1)(B) compels the same conclusion. <u>See</u> <u>U.S. v. Amparo</u>, 68 F.3d 1222, 1225-26 (9th Cir. 1995).

crime of violence under 18 U.S.C. § 924(c)(3)(B)'s residual clause is the one <u>Johnson II</u> disallows.[3]

And, despite the appeal of avoiding this constitutional analysis on the ground that murder-for-hire is a "straightforward case[] under the residual clause," the Supreme Court has explained that its holdings "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." <u>Id.</u> at 2560-61.

Nor do the differences between the ACCA's residual clause and § 924(c)(3)(B) alleviate the latter's constitutional flaws. For example, § 924(c)(3)(B) does not contain any confusing list of examples (akin to the ACCA) purporting to guide the court's determination of whether a given crime "involves substantial risk."

However, although <u>Johnson II</u> stated that the enumerated examples contained in the ACCA buttressed the vagueness determination, it certainly did not state that those examples were necessary to its holding. In contrast, in both instances where <u>Johnson II</u> addressed the ACCA's list of examples, the Court explicitly did so in support of and peripherally to an already-drawn conclusion. <u>Id.</u> at 2258, 2561. In other words, <u>Johnson II</u> repeatedly condemns the two-step analysis *itself*; the list of examples in the ACCA merely exacerbated that two-step analysis' vagueness.  And consistent with this understanding, the Supreme Court, in reviewing and

---

[3] The threshold determination that the categorical approach must be used here undercuts arguments made by some of the courts wrestling with this issue. <u>See</u> <u>Shuti v. Lynch</u>, 828 F.3d 440, 450 (6th Cir. 2016) (characterizing <u>United States v. Taylor</u>, 814 F.3d 340 (6th Cir. 2016) as applying a "real-world conduct exception" to save 18 U.S.C. § 924(c)(3)(B)); <u>United States v. Prickett</u>, 2016 WL 4010515 (8th Cir. July 27, 2016) (avoiding 18 U.S.C. § 924(c)(3)(B)'s constitutional flaws by ignoring the applicability of the categorical approach) <u>reh'g granted and opinion vacated</u> <u>United States v. Prickett</u>, 2016 WL 5799691 (8th Cir. Oct. 5, 2016) (affirming result but adopting different reasoning).

summarizing <u>Johnson II's</u> holding, made no reference to the ACCA's enumerated offenses, and instead explained again that the ACCA's "residual clause failed . . . because applying [the serious potential risk standard] under that categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense." <u>Welch</u>, 136 S.Ct. at 1260-62. Accordingly, the lack of any examples in the present provision does not save it from <u>Johnson II's</u> actual holding.

Second, § 924(c)(3)(B) is directed at "physical force" used "in the course" of the purportedly violent offense, whereas the ACCA used the term "physical injury" and omitted the phrase "in the course." This court is unpersuaded that either distinction makes a material difference. "Physical force" used "in the course" of a crime may refer to a slightly narrower set of circumstances than "physical injury," but this distinction does not alter the unconstitutional framework of tethering a categorically defined crime to an uncertain standard.

Finally, the government argues that because § 924(c)(3)(B) has not matched the ACCA's ability to cause the Supreme Court "repeated attempts and repeated failures to craft a principled and objective standard," <u>id.</u> at 2558, a vagueness ruling would be inappropriate. While the Supreme Court did find that a statute's ability to elude clear standards is *indicative* of vagueness, it by no means conditioned its holding on such a history. Hence the Court noted that the ACCA's history "confirm[ed]" (rather than proved) its unconstitutional vagueness. <u>Id.</u> In other words, a vague statute is vague regardless of whether it repeatedly confounded the Supreme Court or split the circuits. Moreover, the array of circuit and district court decisions resolving this (and similar issues attendant to 18 U.S.C. § 16(b)) in differing ways—as cited by the parties' briefs and revealed by this court's own research—belies the notion that § 924(c)(3)(B) has avoided causing confusion.

In reaching this conclusion, this court finds persuasive the reasoning in four recent circuit court opinions invalidating language in 18 U.S.C. § 16(b) that exactly matches § 924(c)(3)(B). Shuti v. Lynch, 828 F.3d 440, 446 (6th Cir. 2016); Dimaya v. Lynch, 803 F3d 1110, 1120 (9th Cir. 2015), pet. cert. granted, __ S. Ct. __ (2016); United States v Vivas-Ceja, 808 F.3d 719, 721-23 (7th Cir. 2015); Golicov v. Lynch, 2016 WL 4988012 at *5-8 (10th Cir. Sep. 19, 2016). Title 18, Section 16(b), applies by incorporation to Title 18 statutes that lack their own definition of a "crime of violence" and, like the ACCA, applies the "substantial risk" standard to the "ordinary" case rather than actual facts. See Leocal v. Ashcroft, 543 U.S. 1, 6 (2004) (noting that "Congress therefore provided in § 16 a general definition of the term 'crime of violence' to be used throughout the [Comprehensive Crime Control] Act [of 1984]"). Each of these decisions confirms the immateriality of the above-referenced textual differences between the ACCA's residual clause and the language employed by both § 16(b) and § 924(c)(3)(B), and confirms further Johnson II's holding: that it is unconstitutionally vague to apply a standard such as "substantial risk" to a judge-made abstraction of an "ordinary" crime.[4]

---

[4] The court recognizes that other circuits have reached a contrary result, but finds these decisions unpersuasive. In United States v. Taylor, 814 F.3d 340 (6th Cir. 2016), the Sixth Circuit drew upon differences between the ACCA and § 924(c)(1)(B), and held that these differences together remedied the constitutional flaws that Johnson II identified. In a subsequent decision, a different panel of the Sixth Circuit—guided by Welch v. U.S., 136 S. Ct. 1257 (2016), which re-emphasized the categorical approach's centrality to the Johnson II holding—found the identical language in § 16(b) unconstitutionally vague, and distinguished Taylor on the ground that it applied a "real-world conduct exception" to save 18 U.S.C. § 924(c)(1)(B). Shuti v. Lynch, 828 F.3d 440, 450 (6th Cir. 2016). United States v. Prickett, 2016 WL 5799691 (8th Cir. October 5, 2016), essentially adopts the Sixth Circuit's Taylor decision wholesale, but without regard to the fact the Sixth Circuit narrowed that decision in Shuti in light of Welch. United States v. Hill, 2016 WL 4120667 (2nd Cir. August 3, 2016), argues with some persuasive force that Johnson II does not extend to 18 U.S.C. § 924(c)(1)(B) based on the textual differences (outlined above) between the provision and the ACCA. But for reasons just explained, this court agrees with the four circuit opinions construing 18 U.S.C. § 16(b) that find these textual differences unpersuasive, as they fail to sufficiently avoid the constitutional concerns as elucidated in Johnson II and later identified as central in Welch.

### c. Murder-for-Hire Does Not Fall Under the Force Clause, 18 U.S.C. § 924(c)(3)(A)

The above analysis does not address 18 U.S.C. § 924(c)(3)(A). That clause – known as the "force clause" – defines a "crime of violence" as an offense which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The murder-for-hire statute authorizes punishment of whoever "travels or causes another" to engage in interstate commerce "with intent that a murder be committed" for hire, or "conspires to do so." 18 U.S.C. § 1958. A person may thus violate 18 U.S.C. § 1958 by mere engagement in interstate commerce with the *intent* that statute forbids. Because this (indivisible) statute can be violated without proof of "use," "attempted use," or "threatened use of physical force," the murder-for-hire statute does not have as a required "element the use, attempted use, or threatened use of physical force against the property of another."

As a result, the definition of "crime of violence" found in 18 U.S.C. § 924(c)'s force clause does not reach the murder-for-hire statute under which the Defendant is charged.

### III.   Conclusion

For the foregoing reasons, Count II of the Indictment, which as a matter of law depends on murder-for-hire qualifying as a "crime of violence," cannot stand. Defendant's Motion to Dismiss [#50] Count Two of Indictment is GRANTED.

IT IS SO ORDERED.

October 17, 2016                                          /s/ Indira Talwani
                                                         United States District Judge